FILED

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

99 MAR 18 AM 9: 27

U.S. DISTRICT COURT
N.D. OF ALABAMA

JANICE C. HOEHN                    )
                                   )
        Plaintiff,                 )
                                   )
    vs.                            )        CV-98-BU-1245-S
                                   )
GODIVA CHOCOLATIER, INC.,          )        **ENTERED**
                                   )
        Defendant.                 )        MAR 1 8 1999

## MEMORANDUM OF OPINION

        This case is presently before this Court on Motion for Summary Judgment, filed by

Defendant, Godiva Chocolatier, Inc. After consideration of the evidence submitted, the Court finds

the Motion for Summary Judgment is due to be granted in part and denied in part.

### SUMMARY JUDGMENT STANDARD

        Summary judgment provides the parties an opportunity to test the mettle of a case before it

ever reaches trial. On a motion for summary judgment, the court assesses all of the proof the parties

bring to bear in order to ascertain whether there is a genuine need for a trial. *Matsushita Elec. Indus.*

*Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538

(1986)(quoting Advisory Committee Note to 1963 Amendment to Fed. R. Civ. P. 56(e)). Summary

judgment is appropriate only if the court concludes that no genuine issue of material fact exists and

that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see Anderson*

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986).

A party seeking summary judgment has the initial responsibility of informing this court of the grounds for its motion and specifically identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323, 106 S. Ct. at 2553; *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11ᵗʰ Cir. 1991). The moving party's burden is not meager; it must illuminate for the court the reasons why the non-moving party cannot or does not raise a genuine issue of material fact sufficient to support a trial. *Id.* The moving party's burden was set forth in *Clark* as follows:

> The moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment. *Celotex* did not change the general rule. *Celotex* simply holds that under certain circumstances the movant may meet its Rule 56 burden without negating an element of the non-moving party's claim and that under such circumstances it is sufficient to point to materials on file that demonstrate that the party bearing the burden of proof at trial will not be able to meet that burden. Even after *Celotex* it is never enough to simply state that the non-moving party cannot meet its burden at trial.

*Id.* (citing *Celotex*, 477 U.S. at 323-25, 106 S. Ct. 2553-54).[1]

Once the moving party has satisfied this initial burden, however, the nonmoving party "must

---

[1] The Eleventh Circuit recognized that *Celotex* created "an exception to the *Adickes* rule for [an] uncommon situation," i.e., "when neither party could prove either the affirmative or the negative of an essential element of the claim." *Clark*, 929 F.2d at 607, 608. In this "uncommon situation," the *Celotex* exception allows a moving party to carry its burden by showing or "pointing out," by reference to record, that the non-moving party cannot prove its claim. *Id.* at 607. Obviously, this case does not fall into the "uncommon situation." addressed in *Celotex*. *See* Def. Memorandum in Support of Motion for Summary Judgment, p. 14.

make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." *Howard v. BP Oil Company*, 32 F.3d 520, 523 (11th Cir. 1994). "Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553 (quoting Fed. R. Civ. P. 56(e)); *see Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). However, "Rule 56 . . . does not impose upon the district court a duty to survey the entire record in search of evidence to support a non-movant's opposition." *Id.*; *see also Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir.) ("There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment."), *cert. denied sub nom.*, 516 U.S. 817, 116 S. Ct. 74, 133 L. Ed. 2d 33 (1995).

In resolving whether a given factual dispute requires submission to a jury, the court must inspect the presented evidence through the looking glass of each party's substantive evidentiary burden. *Anderson*, 477 U.S. at 254-55, 106 S. Ct. at 513. The court, however, must avoid weighing conflicting evidence for probity or making credibility determinations. *Welch v. Celotex Corp.*, 951 F.2d 1235, 1237 (11th Cir. 1992). "It is not part of the court's function, when deciding a motion for summary judgment, to decide issues of material fact, but rather decide whether such issues exist to be tried. The Court must avoid weighing conflicting evidence or making credibility determinations." *Hairston v. Gainesville Sun Publishing Co.*, 9 F.3d 913, 919 (11th Cir. 1993). At the same time, "[t]he nonmoving party must provide more than a mere scintilla of evidence to survive a motion for judgment as a matter of law; 'there must be a substantial conflict in evidence to support a jury

question.'" *Tidwell v. Carter Products*, 135 F.3d 1422, 1425 (11th Cir. 1998) (citing *Carter v. City of Miami*, 870 F.2d 578, 581 (11th Cir.1989)).

## STATEMENT OF FACTS[2]

Plaintiff Janice C. Hoehn, a female, was a store manager at Defendant Godiva Chocolatier's Riverchase Galleria store. She worked as store manager for approximately seven years before Godiva terminated her on June 5, 1997. Prior to her termination, Ms. Hoehn received good job performance evaluations.

Beginning in and around March 1997, problems began to appear at Ms. Hoehn's store, when the store was relocated.[3] Ed Apple, Ms. Hoehn's immediate supervisor, and Kimberly Biggs, Mr. Apple's supervisor, took action, purportedly for the purpose of improving the store's performance and Ms. Hoehn's job performance.

Mr. Apple and Ms. Biggs visited the Riverchase store on March 17, 1997. During this meeting, Ms. Hoehn alleges that Ms. Biggs made several age-derogatory comments, including (1) Ms. Hoehn's crocheted vest looked like something an old person would wear, (2) Ms. Hoehn should join AARP (American Association of Retired Persons), and (3) Ms. Hoehn should consider working for a "mom and pop" organization. Also during this visit, Ms. Biggs made comments to Ms. Hoehn

---

[2]As required when determining a Motion for Summary Judgment, the Statement of Facts reflects the facts in the light most favorable to Ms. Hoehn, the non-moving party. All disputed facts are resolved in her favor and all reasonable inferences arising from those facts are drawn in her favor. *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89, 110 S. Ct. 3177, 3188-89, 111 L. Ed. 2d 695 (1990); *Zaben v. Air Products & Chemicals, Inc.*, 129 F.3d 1453, 1455 (11th Cir. 1997).

[3]The parties dispute when Ms. Hoehn's difficulties arose. However, for purposes of this Motion, sufficient evidence exists to allow a reasonable jury to find that her problems began in March 1997.

regarding getting the store out of a mall lease. Ms. Hoehn contends that Ms. Biggs told her to do what she had to do to get out of the lease, which was held by a man, and that men could be manipulated. Ms. Hoehn contends that she did get Godiva out of the lease because of her good reputation in the mall.

During this period, Ms. Hoehn's problems began to be documented. On March 5, 1997, Ms. Biggs wrote her up because one employee did not have on an apron and another employee appeared to be eating on the floor.[4] Godiva had issued an unwritten policy of writing up managers for employee violations of the dress code and eating on the floor. Ms. Hoehn received a second write-up on March 17, 1997 for "coaching logs not up to numerous standards, guidelines have been given through MTP[5] pilot program, and area manager during store visits and at area meetings." At this time, an "Action Plan" was prepared for Ms. Hoehn. According to the plan, Ms. Hoehn was to complete the various section by July 1, 1997.

This plan states that the "most critical issue" is that "shopper reports are weak." Ms. Hoehn was not written up for shopper reports, but only for incomplete coaching logs. The plan does note that "[s]taff not completely trained using the sales person check list." The issues "covered' by the plan include: (1) staff training, (2) increase corporate sales, (3) improved scheduling, (4)increased promotional and contest activity, and (5) improved effectiveness of coaching. To effectuate the plan, Ms. Hoehn was given a list of task and/or goals, each with a completion date. The plan states, specifically, "if segments of the action plan are not completed on time, or in the manner described,

---

[4]Apparently, "floor" referred to the area of the store in which customers are served, as opposed to a stock room or office.

[5]"MTP" is Management Training Program.

corrective action will follow."

On April 17, 1997, Ms. Hoehn was given a revised Action Plan. The revised plan extended the dates for completion of the task and/or goal in accordance with the recommendations of Godiva's National Training Manager. The revised plan was presented to Ms. Hoehn by Mr. Apple, Ms. Biggs, and Dottie McAndrew, Godiva's Human resource Manager. "Increase corporate sales" does not appear on the revised plan.

As to "staff training," the revised plan indicates that Ms. Hoehn had completed the first part of the "staff training" section. The next part was to "[s]ubmit filled out [training] checklists to Ed [Apple]," beginning April 28, 1997, and weekly thereafter.

As to "improved scheduling," Ms. Hoehn was required by the terms of the revised plan to start scheduling herself to work, beginning April 27, 1997, during "peak sales of the store." This scheduling apparently was to be done per a "sales by time analysis," which the revised plan indicates Mr. Apple was preparing to determine the peak business times for the store. Mr. Apple did not perform this analysis. The analysis was to provide information necessary to complete this task.[6]

As to "increased promotional and contest activity," Ms. Hoehn was to "submit contest ideas" to Ed Apple by May 5, 1997.

As to "improved effectiveness of coaching" and management training, the revised plan set forth numerous dates: beginning April 26, 1997 and continuing until August 27, 1997 for completion of that section of the MTP and submitting the same to Mr. Apple. From August 2, 1997 until October 4, 1997, Ms. Hoehn was required to submit coaching logs and performance summaries on

---

[6]The revised plan required Ms. Hoehn to schedule a manager to be on the sales floor "for any daypart that represents more than 20% of the day's business."

a weekly basis. Also, beginning May 1, 1997, Ms. Hoehn was required to submit a list to Mr. Apple of each employee to be coached.

Ms. Hoehn took a leave of absence due to work-related stress from April 21 until May 12, 1997. April 21, 1997, was a Monday; the record does not indicate what days, if any, Ms. Hoehn was scheduled to work between the date she was given the revised plan (April 17, 1997) and the date her sick leave began (April 21, 1997). However, it is undisputed that during this four-day period, she had no scheduled deadlines under the revised plan.

On May 13, 1997, Mr. Apple sent Ms. McAndrews a memorandum recommending that Ms. Hoehn be terminated. Mr. Apple testified that he recommended the termination because Ms. Hoehn "had completely disregarded" the revised action plan. In particular, Mr. Apple commented on the fact that Ms. Hoehn had not returned the MTP book to him "before her absence from the store."[7] The revised plan, however, contains certain deadlines for completion of the MTP program, which a reasonable jury could infer would require the book.

Ms. McAndrew gave Mr. Apple's recommendation to John Kessler, Director of Human Resources and Ms. McAndrew's supervisor.[8]  The evidence indicates that Mr. Kessler made the

---

[7]Mr. Apple testified that he did not know that Ms. Hoehn was absent when he wrote the memorandum to Ms. McAndrews. However, there is evidence in the record sufficient to allow a reasonable jury to reject this testimony. The memorandum itself acknowledges that Ms. Hoehn was absent and there is evidence that Ms. Hoehn's paycheck was held during part of her absence, a fact the jury could infer was known to Mr. Apple.

[8]The Court notes that, with the exception of Ms. Biggs, all persons involved in  the decision to terminate Ms. Hoehn are over forty. However, the Supreme Court has rejected any "conclusive presumption that an employer will not discriminate against members of his own [protected class]." *Oncale v. Sundowner Offshore Service, Inc.*, 523 U.S. 75, ____, 118 S. Ct. 998, 1001, 140 L. Ed. 2d 201 (1998).

decision to terminate Ms. Hoehn on or about June 2, 1997. Mr. Kessler stated that he discussed Ms. Hoehn's termination with Mr. Apple, Ms. Biggs, and Ms. McAndrews. He also stated that he reviewed information about Ms. Hoehn's "response to management's efforts to help her." McAndrews testified that she believed the earlier March to April period should have been considered as an indication that Ms. Hoehn was not following the plan. However, a reasonable jury could find that Ms. McAndrews's statement is not credible. The revised plan specifically states that Ms. Hoehn had completed certain requirements under the staff training section, including holding a store meeting and completing section 4 of the MTP. Moreover, the fact the plan was "revised" raises an inference that for all concerned parties, the first action plan was replaced by the second action plan.

A reasonable jury could find that not completing assignments due to absence from work, especially as the absence appears to have been occasioned by work-related stress, does not demonstrate an unwillingness to follow the plan. Moreover, a reasonable jury could find that this fact was evident to the decision-makers. The evidence in undisputed that no one discussed the deadlines with Ms. Hoehn after she returned to work and before the decision to terminate her for willful failure to follow the revised plan.

On or about June 16, 1997, Ms. Hoehn filed a charge of discrimination with the EEOC stating that she was discriminated against on the basis of sex, retaliation, age and disability. Ms. Hoehn received her right-to-sue letter from the EEOC on February 25, 1998, and she filed this lawsuit on May 18, 1998.

## DISCUSSION

## A.    TITLE VII/HOSTILE ENVIRONMENT

Ms. Hoehn contends that she was harassed and lists numerous incidents – increased write-ups, revealing confidential information, offensive comments about her age and appearance, and surprise store visits – as evidence that her work environment was hostile and abusive due to harassment. However, Ms. Hoehn has not presented sufficient evidence to show that a question of fact exists as to whether this harassment was because of her sex.

The elements of a Title VII sexual harassment claim are:

(1) the employee must belong to a protected group; (2) the employee must have been subject to unwelcome sexual harassment; (3) the harassment must have been based on sex; (4) the harassment must have been sufficiently severe or pervasive to alter the terms and conditions or employment; and (5) there must be a basis for holding the employer liable for the harassment either directly or indirectly.

*Mendoza v. Borden, Inc.*, 158 F.3d 1171, 1175 (11th Cir. 1998).

The Supreme Court reiterated that sexual harassment, to be actionable, must be because of

sex.

Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at "discriminat[ion] . . . because of . . . sex." We have never held that workplace harassment, even harassment between men and women, is automatically discrimination because of sex merely because words used have sexual content or connotations. "The critical issue, Title VII's text indicates, is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed."

*Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, \*\*, 118 S. Ct. 998, 1002, 140 L. Ed. 2d

201 (1998)(quoting 42 U.S.C. § 2000e-2(a)(1); *Harris v. Forklift Systems*, 510 U.S. 17, 25, 114 S.

Ct. 367, 372, 126 L. Ed. 2d 295 (1993)(Ginsberg, J., concurring)).

The Court went on to note that the "because of sex" element of a harassment claim was easily

met when the sexual harassment involved "explicit or implicit proposals of sexual activity."

However, the Court noted:

> [H]arassing conduct need not be motivated by sexual desire to support an inference of discrimination on the basis of sex. A trier of fact might reasonably find such discrimination, for example, if a female victim is harassed in such sex-specific and derogatory terms by another woman as to make it clear that the harasser is motivated by general hostility to the presence of women in the workplace. A same-sex harassment plaintiff may also, of course, offer direct comparative evidence about how the alleged harasser treated members of both sexes in a mixed-sex workplace. Whatever evidentiary route the plaintiff chooses to follow, *he or she must always prove that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted "discrimina[tion] . . . because of . . . sex."*

*Id.*(emphasis added); *see also Bolden v. PRC, Inc.*, 43 F.2d 545, 551 (10th Cir. 1995)("General harassment if not racial or sexual is not actionable.").

In this case, the incidents alleged to be harassing are facially gender-neutral. The only evidence offered by Ms. Hoehn that the harassment was because of her gender is the isolated comment regarding the lease. This fact, alone, is insufficient under the circumstances of this case to allow a reasonable jury to infer that harassing conduct was motivated by Ms. Hoehn's gender.

Therefore, Ms. Hoehn's claim of Title VII sexual harassment is due to be dismissed.

## B. ADA/PERCEIVED DISABILITY

Ms. Hoehn contends that Godiva discriminated against her on the basis of a perceived disability.

The Americans with Disabilities Act (hereinafter "ADA") provides, "No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual . . . ." 42 U.S.C. § 12112(a). "Disability," with respect to an individual, is defined in the Act as:

(A)     a physical or mental impairment that substantially limits one or more of the major life activities of such individual;

(B)     a record of such an impairment; or

(C)     being regarded as having such an impairment.

42 U.S.C. § 12102 (2).

Ms. Hoehn contends that Godiva regarded or perceived her as being disabled; in other words, Godiva considered Ms. Hoehn as having a "physical or mental impairment that substantially limits one or more of [her] major life activities." 42 U.S.C. § 12102 (2)(A).

Ms. Hoehn has not presented sufficient evidence that Godiva regarded or perceived her as "disabled" within the meaning of the ADA. She has presented evidence she contends shows that Godiva was aware that she had taken leave due to stress. Although this evidence may be sufficient to allow a reasonable jury to infer that Godiva regarded Ms. Hoehn as having an impairment, it is not sufficient evidence to allow that jury to infer that the impairment substantially limited a major life activity. Ms. Hoehn was off from work for a period of less than one month and she returned to work and assumed her prior duties. Without more, the fact that she took leave related to stress is not sufficient to infer that Godiva considered her disabled.

Godiva also argues that Ms. Hoehn is contending that it regarded her as disabled due to alcoholism or alcohol abuse because one of her supervisors commented that she had "fallen off the wagon." However, Ms. Hoehn does not raise this argument in her brief in opposition to Godiva's Motion for Summary Judgment. Moreover, there is nothing in the record to indicate that Godiva perceived Ms. Hoehn as disabled due to alcoholism or alcohol abuse.

Therefore, based on the foregoing, a reasonable jury could not find that Godiva regarded Ms.

Hoehn as disabled.  Ms. Hoehn's ADA claim is due to be dismissed.

### C.   ADEA/AGE DISCRIMINATION

#### 1.   DISCHARGE

In order to establish a claim of employment discrimination, "a plaintiff may use three different kinds of evidence of discriminatory intent: direct evidence, circumstantial evidence or statistical evidence." *Standard v. A.B.E.L. Services, Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998).  Ms. Hoehn seeks to prove her age discrimination case through direct evidence and/or circumstantial evidence. "The analytical framework and burden of production varies depending on the method of proof chosen." *Id.*

##### a.   DIRECT EVIDENCE

"If a plaintiff can provide direct evidence of discriminatory intent, then the employer must prove by a preponderance of the evidence that the same employment decision would have been made in the absence of the discriminatory intent." *Id.* (citing *Wall v. Trust Co. of Georgia*, 946 F.2d 805, 809 (11th Cir. 1991)).

Ms. Hoehn has presented evidence of numerous statements made by Ms. Biggs that Ms. Hoehn contends are "direct evidence" of age discrimination. "Direct evidence of discrimination would be evidence which, if believed, would prove the existence of a fact without inference or presumption." *Carter v. City of Miami*, 870 F.2d 578, 581-82 (11th Cir. 1989). "Only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of [age] constitute direct evidence. *Id.* at 582.

Direct evidence relates to the actions, statements, or bias of the person making the challenged employment decision. *Trotter v. Board of Trustees of University of Alabama*, 91 F.3d 1449, 1453-54

(11th Cir. 1996). Direct evidence is *not* "stray remarks in the workplace," "statements by nondecisionmakers," and "statements by decisionmakers unrelated to the decisional process itself."

> Statements indicating [discriminatory] bias on the part of a decisionmaker in an employment setting can constitute direct evidence of . . . discrimination in Title VII cases. See *Haynes v. W.C. Caye & Co.*, 52 F.3d 928, 931 (11th Cir. 1995)("Indeed, a statement that members of a racial minority in general . . . are simply not competent enough to do a particular job would seem to be a classic example of direct evidence."); *Bell v. Birmingham Linen Service*, 715 F.2d 1552, 1556 (11th Cir. 1983), *cert. denied*, 467 U.S. 1204, 104 S. Ct. 2385, 81 L. Ed. 2d 344 (1984 )(finding statement by decisionmaker that he would not let female plaintiff work in the washroom because then all women would want to work there "highly probative evidence of illegal discrimination.")

*Trotter*, 91 F.3d at 1453.

Ms. Hoehn has presented evidence that Ms. Biggs remarked that a vest similar to the one Ms. Hoehn was wearing was reminiscent of something a grandmother would wear; that she told Ms. Hoehn she should join AARP; and she told Ms. Hoehn that she should work for a "mom and pop" organization. Although all of these comments could be found to be related to Ms. Hoehn's age and/or reflective of Ms. Biggs attitude toward Ms. Hoehn's age, they do not directly relate to an employment decision and they are not directly reflective of bias. Therefore, the Court finds that the statements are not direct evidence of discrimination.

### b.    CIRCUMSTANTIAL EVIDENCE

When a plaintiff relies on circumstantial evidence to prove she was discharged because of her age, the burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973) applies. *Bogle v. Orange County Board of County Commissioners*, 162 F.3d 653, 656 (11th Cir. 1998). Pursuant to this framework, Ms. Hoehn must show a prima facie case of discrimination by producing sufficient evidence to allow a reasonable jury to find:

> (1) that [she] was a member of the protected group of persons between the ages of
> forty and seventy; (2) that [she] was subject to adverse employment action; (3) that
> a substantially younger person filled the position . . . from which [she] was
> discharged; and (4) that [she] was qualified to do the job for which [she] was
> rejected.[9]

*Id.* at 656-57 (quoting *Turlington v. Atlanta Gas Light Co.*, 135 F.3d 1428, 1432 (11th Cir.

1998)(citing *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 313, 116 S. Ct. 1307,

1310, 134 L. Ed. 2d 433 (1996))).  Godiva does not move for a summary judgment on the ground

that Ms. Hoehn cannot establish a prima facie case of age discrimination based on circumstantial

evidence.  Therefore, for purposes of deciding the Motion for Summary Judgment, this Court

assumes that Ms. Hoehn will be able to establish a prima facie case of age discrimination.

Once the prima facie case is established, the defendant/employer must respond with a

"legitimate, nondiscriminatory reason for its actions." *Bogle*, 162 F.3d at 657. Godiva asserts that

it terminated Ms. Hoehn because of "her consistent poor performance in several areas, her

unwillingness to redress her performance deficiencies or to comply with the guidance given her in

two Action Plans, and her violations of Godiva policy." Defendant's Brief in Support of its Motion

for Summary Judgment, pp. 2-3.  In support of this statement, Godiva cites the Court to Mr.

Kessler's affidavit. *Id.* & note 5.  However, Mr. Kessler's affidavit does not specifically state what

was his motivation.

Mr. Kessler states that:

> [He] made the decision to terminate Ms. Hoehn's employment on or about
> June 2, 1997, after receiving Edwin Apple's recommendation of termination,

---

[9]"[I]n discharge or demotion cases, where a plaintiff has held a position for a significant
period of time, qualification for that position, sufficient to satisfy the test of a prima facie case[,]
can be inferred." *Pace v. Southern Railway System*, 701 F.2d 1383, 1386 n.7.

speaking with Ms. Hoehn's supervisors and other Godiva employees (including Dorothy (Dottie) McAndrew and Erin Clark) who had knowledge of relevant events, reviewing information related to the performance of the Riverchase Galleria store, considering efforts made by Godiva management to assist Ms. Hoehn in turning the store and her performance around and considering Ms. Hoehn's response to management's efforts to help her.

Def. Evidentiary Submission, Exh. 3, ¶ 7. He also states he did not decide to terminate Ms. Hoehn because of her age, gender, or disability, actual or perceived. *Id.* ¶ 8. Thus, Godiva has submitted evidence from Mr. Kessler about what information he considered in terminating Ms. Hoehn and reasons that did *not* motivate his decision, but this evidence stops short of actual articulation of the reason or reasons *why* Mr. Kessler decided to terminate Ms. Hoehn.

"If the trier of fact finds that the elements of the prima facie case are supported by a preponderance of the evidence and the employer remains silent, the court must enter judgment for the plaintiff." *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 311, 116 S. Ct. 1307, 1309, 134 L. Ed. 2d 433 (1996).   Thus, it follows that failure to articulate a legitimate, nondiscriminatory reason at the summary judgment stage would compel denial of the movant/employer's motion.

While the record does not contain evidence of the reason *why* Mr. Kessler terminated Ms. Hoehn, it does contain evidence to support what motivated Mr. Apple's recommendation that Mr. Kessler should terminate Ms. Hoehn. Mr. Apple recommended that she be terminated "purely on total lack of response to our action plan." *See* Def. Evidentiary Submission, Exh. 5, p. 95 and Exhibit 8. Lack of response to the action plan as the reason for Ms. Hoehn's termination is supported by Ms. McAndrews's testimony that she and Kessler reviewed Mr. Apple's memorandum, but waited "exactly one week" after Ms. Hoehn returned to work and things were still not coming

to Mr. Apple. *Id.*, Exh. 7, pp. 99-100. For purposes of summary judgment, therefore, this is the only articulation of motive supported by the record. Thus, of the three reasons articulated in Godiva's argument, only "unwillingness to redress her performance deficiencies or to comply with the guidance given her in two Action Plans" as articulated motivation for the decision to terminate Ms. Hoehn is supported by the record.

The next step, as described by the Supreme Court, requires the plaintiff to come forward with evidence proving that the articulated, nondiscriminatory reason is a pretext:

> [The plaintiff] now must have the opportunity to demonstrate that the proffered reason was not the true reason for the employment decision. . . . [The plaintiff] may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.

*Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 256, 101 S. Ct. 1089, 1095, 67 L. Ed. 2d 207 (1981), *quoted in Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997), *cert. denied*, ___ U.S. ___, 118 S. Ct. 685, 139 L. Ed. 2d 632 (1998 ). The Supreme Court has also held that evidence sufficient to support a reasonable juror's disbelief of the articulated reason, together with the prima facie case, is sufficient to permit the fact finder to infer discrimination:

> The fact finder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination. Thus, rejection of the defendant's proffered reasons will permit the trier of fact to infer the ultimate fact of intentional discrimination, and the Court of Appeal was correct when it noted that, upon such rejection, "no additional proof of discrimination is required."

*St. Mary's Honor Center v. hicks*, 509 U.S. 502, 511, 113 S. Ct. 2742, 2749, 125 L. Ed. 2d 407 (1993)(quoting *Hicks v. St. Mary's Honor Center*, 970 F.2d 487, 493 (8th Cir. 1992)), *quoted in Combs*, 106 F.3d at 1529.

The Eleventh Circuit, relying on *Hicks*, held:

> [Hicks] holds that proof that a defendant's articulated reasons are false is not proof of intentional discrimination; it is merely evidence of intentional discrimination. However, evidence of intentional discrimination is all a plaintiff needs to defeat a motion for summary judgment. That evidence must be sufficient to create a genuine factual issue with respect to the truthfulness of the defendant's proffered explanation.

*Howard v. BP Oil*, 32 F.2d 520, 525 (11th Cir. 1994)(emphasis in original), *quoted in Combs*, 106 F.3d at 1531.

Citing *Hicks* and *Isenbergh*, Godiva argues, "[Ms. Hoehn] must offer substantial evidence both that the articulated reason is false, AND that the true reason was discriminatory or retaliatory." Def. Brief in Reply, pp. 1-2 (citing *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, ***, 113 S. Ct. 2742, 2753, 2755, 125 L. Ed. 2d 407 (1993); *Isenbergh v. Knight-Ridder Newspaper Sales, Inc.*, 97 F.3d 436 (11th Cir.), *cert. denied*, ___ U.S. ___, 117 S. Ct. 2511, 138 L. Ed. 2d 1014 (1996); emphasis in the original).

Although not acknowledged by Defendant, the Eleventh Circuit has rejected *Isenbergh* and its interpretation of *Hicks* as requiring a showing of pretext plus evidence of discrimination. *See Arrington v. Cobb County*, 139 F.3d 865, 875 & n.21 (11th Cir. 1998)(noting that a plaintiff may defeat a motion for summary judgment "by undermining the credibility of a defendant's explanation" without showing directly that defendant/employer "harbored an illegal motive.");[10]   Evans v.

---

[10]The Eleventh Circuit also noted:

> We understand there may once have been some confusion regarding our court's precedents on this issue. *See Isenbergh v. Knight-Ridder Newspaper Sales, Inc.*, 97 F.3d 436 (11th Cir. 1996)(criticizing *Howard*). Today, however, *Howard* clearly represents the law in this circuit, see *Combs*, 106 F.3d at 1529-35 (collecting cases), as the author of *Isenbergh* has subsequently acknowledged, *see*

McClain of Georgia, Inc., 131 F.3d 957, 964-65 (11ᵗʰ Cir. 1997)(reversing a district court's granting of summary judgment on the ground that the plaintiff failed to present sufficient evidence "indicat[ing] that intentional race discrimina[tion] was the true reason for his discharge;"holding that "a plaintiff can survive a motion for summary judgment or for judgment as a matter of law simply by presenting evidence sufficient to demonstrate a genuine issue of material fact as to the truth or falsity of the employer's legitimate, nondiscriminatory reasons" (internal citations omitted)); *Combs v. Plantation Patterns*, 106 F.3d 1519, 1534 (11ᵗʰ Cir. 1997)("Because the *Walker*[11] decision was preceded by a number of earlier Eleventh Circuit decisions holding that a jury question is created when a prima facie case is coupled with evidence sufficient to permit a reasonable fact finder to disbelieve an employer's proffered reasons for the challenged action, those earlier decisions remain binding on this Court, and all panels of it. They, and not *Walker* or *Isenbergh*, state what has been and will be the law of this circuit unless and until the en banc Court, the Supreme Court, or Congress changes it.")(internal citations omitted).

Clearly, to defeat a motion for summary judgment, a plaintiff need only show a prima facie case and evidence that the defendant/employer's articulated, nondiscriminatory reason is unworthy of credence. As stated above, for purposes of summary judgment, the parties assume that Ms. Hoehn can establish a prima facie case of age discrimination. Thus, Ms. Hoehn need only show evidence sufficient to create a question of fact as to the truthfulness of Godiva's articulated reason in order

---

*Evans v. McClain of Ga., Inc.*, 131 F.3d 957, 964-65 (11ᵗʰ Cir. 1997)(per curium).

*Arrington*, 139 F.3d at 875 n.21.

[11]*Walker v. NationsBank of Florida*, 53 F.3d 1548 (11ᵗʰ Cir. 1995).

Page 18 of 21

to survive summary judgment.[12]  The record contains sufficient evidence from which a reasonable jury could determine that Godiva's articulated reason was not the true reason for its decision to terminate Ms. Hoehn.  Ms. Hoehn was given a revised plan for the purpose of correcting performance deficiencies.  She was absent from work for several weeks and the evidence is sufficient to allow a reasonable jury to infer everyone involved in the decision to terminate her knew of her absence.  Yet she was ostensibly fired because she did not meet the date of the revised plan, and, perhaps most telling, because the decision-makers determined that she willfully and deliberately refused to comply.  There is sufficient evidence from which a reasonable jury could determine that Ms. Hoehn's failure to meet the deadlines in the revised plan was not willful and that Godiva's decision-makers were aware that her failure to meet the deadlines was not willful.  Therefore, Defendant's motion for summary judgment as to Ms. Hoehn's ADEA termination claim is due to be denied.

## E.    RETALIATION

In her brief in opposition to the Motion for Summary Judgment, Ms. Hoehn argues that she was terminated in retaliation for her complaint to Human Resources that Godiva was discriminating against her.  However, Ms. Hoehn has not plead a retaliation claim based the opposition clause of

---

[12]This Court notes the lack of evidence for Godiva's articulated reasons set forth in its brief. For that reason, the Court, for purposes of summary judgment, has assumed the articulated reason to be the lack of effort and/or failure to progress with her action plan, as recommended by Mr. Apple in his May 13th memorandum. The Court makes no finding that Godiva cannot produce evidence of Mr. Kessler's motivation, which is lacking in its summary judgment submission.

42 U.S.C. § 2000e-3(a).[13]  Ms. Hoehn's Complaint alleges that "she was terminated in part or in

whole in RETALIATION of a charge filed with E.E.O.C."  Complaint (Doc. 1), Count III, ¶ 4

(emphasis in original).  Thus, Ms. Hoehn's claim is for retaliation related to the actual filing of a

charge of discrimination with the EEOC, or participation activity.  Ms. Hoehn was terminated on

June 5, 1997; she did not file an EEOC charge until June 12, 1997.  Therefore, Ms. Hoehn cannot

prove that she was fired in retaliation for *filing* an EEOC charge.

Also, the retaliation claim is not included in Plaintiff's Position Statement in the Pretrial

Order.[14]  Pretrial Order (Doc. 11), p.2.  Because the claim was not included in the Pretrial Order, it

is deemed abandoned.  Fed. R. Civ. P. 16(e); *see State Treasurer of the State of Michigan v. Barry*,

1999 WL 79734, slip op. at *2 & *16 n.5; *Bivins v. Jeffers Vet Supply*, 873 F. Supp. 1500, 1510

---

[13]Section 2000e-3(a) provides that it is unlawful to discriminate against an employee that
has engaged in protected activity.  The statute divides "protected activity" into two broad
categories: (1) opposition activity and (2) participation activity.  Opposition activity includes
employee activity in "oppos[ing] any practice made unlawful" by Title VII, such as complaining
to the employer about job discrimination.  Participation activity includes employee activity in
actually filing a charge with the EEOC or "participat[ing] in any manner in an investigation,
proceeding, or hearing" pursuant to Title VII.

[14]Ms. Hoehn's position is stated as follows:

Plaintiff is a member of a protected group: she is a qualified individual
over the age of 40.  Plaintiff was perceived by the Defendant as being too old.
Plaintiff was subjected to verbal harassment by the district and regional managers
both in the workplace and in staff meetings.  Plaintiff sought assistance through
the Defendant's Employee Assistance Program for stress related illness and
Plaintiff alleges that due to her attending the program, Defendant perceived her as
having a disability.  Plaintiff alleges that the disparate treatment she received was
due in part or in whole to her sex, female, in violation of Title VII of the Civil
Rights Act of 1964.

Pretrial Order (Doc. 11), p. 2.

(M.D. Ala. 1994)(citing *McGinnis v. Ingram Equipment Co,*, 918 F.2d 1491, 1494 (11th Cir. 1990));

6A Charles Alan Wright, et al., <u>Federal Practice and Procedure</u> § 1526 (2d ed. 1990).


<u>CONCLUSION</u>

Based on the foregoing, Godiva's Motion for Summary Judgment is due to be granted as to

all claims, except Ms. Hoehn's ADEA termination claim. The Court will enter a separate order

contemporaneously herewith, in accordance with the memorandum of opinion.

DONE this 17th day of March, 1999.

H. DEAN BUTTRAM, JR.
UNITED STATES DISTRICT JUDGE